IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
LESLIE E. WAGENHEIM,                : CASE NO.  1:04 CV 0239
                                                               :
                                          Plaintiff  :
                                                               :
           -vs-                              :
                                                               :
                                                               :
NATURAL SCIENCE INDUSTRIES,  : <u>MEMORANDUM AND ORDER</u>
LTD.,                                        : <u>GRANTING IN PART AND DENYING IN</u>
                                                : <u>PART PLAINTIFF'S MOTION FOR</u>
                                Defendant.  : <u>PARTIAL SUMMARY JUDGMENT</u>
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is plaintiff Leslie E. Wagenheim's ("Wagenheim") Motion for Partial Summary Judgment in his contract dispute with defendant Natural Science Industries, Ltd. ("NSI"), regarding NSI's 23 May 2000 purchase of the assets of Xonex International, Inc., ("Xonex") owned by Mr. Wagenheim.  (Docket No. 48).  Part of that transaction, the terms of which were set forth in an Asset Purchase Agreement ("Agreement") (Docket No. 24, Exhibit A), involved a Subordinated Promissory Note ("Note") executed by NSI in favor of Mr. Wagenheim.  (Docket No. 24, Exh. B).  Mr. Wagenheim requests the following, specific, summary relief from the Court in assessing the terms of the Agreement and Note: (1) a determination that NSI breached the terms of the Note when it failed to pay Mr. Wagenheim his last payment of $29,634.67 in its purchase of the Xonex assets (Count I First Amended Complaint, hereinafter

"Complaint"); (2) a finding that NSI breached Section 8.02 of the Agreement when it failed to indemnify Mr. Wagenheim in concurrent state litigation in the Cuyahoga County Court of Common Pleas commenced by Xonex's landlord, Parkway Business Plaza Limited Partnership, in which Mr. Wagenheim was named as a defendant.  ("Parkway") Parkway Business Plaza Limited Partnership v. Custom Zone, Inc., et al, CV-04-544377 (Count III Complaint); and, (3) a declaratory judgment that, pursuant to the Agreement, Mr. Wagenheim is indemnified and held harmless by NSI from all liabilities incurred as a result of NSI's failure to pay the obligations set forth in Section 2.08(c) of the Agreement involving the Parkway Lease.[1] (¶ 54 Count IV Complaint).   NSI did not respond to Mr. Wagenheim's motion for partial summary judgment.

For the reasons set forth below, the Court, first, grants Mr. Wagenheim's motion for partial summary judgment with regard to the balance owed by NSI on the promissory Note. (Count I).   Second, the Court denies, as mooted by preclusion, the plaintiff's request for summary judgment on his claim involving NSI's failure to indemnify Mr. Wagenheim in the state-court litigation begun by Parkway.  Similarly, the Court finds moot due to preclusion Mr. Wagenheim's request for summary judgment on that portion of his claim for a declaratory judgment (paragraph 54 of Count IV of the Complaint)

---

[1] Mr. Wagenheim's request actually reaches beyond the "liabilities, costs incurred, damages, expenses and attorney's fees in the litigation pursued by Parkway," to contemplate "all claims, liabilities, obligations, costs, damages, losses and expenses and reasonable attorneys' fees incurred as a result of NSI's failure to pay the liabilities and obligations set forth in Schedule 2.08(c) of the Asset Purchase Agreement, *including but not limited to* NSI's failure to indemnify Wagenheim" with regard to the Parkway lease. (Emphasis added). Beyond the issue presented here, of the indemnification of Mr. Wagenheim by NSI with regard to the Parkway Lease, the Court notes the absence of a controversy ripe for adjudication.  Pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act requires "a case of actual controversy within its jurisdiction." Brillhart v. Excess Ins. Co. 316 U.S. 491, 494, 499 (1942).

bearing on the parties' Agreement to indemnify the plaintiff pursuant to Schedule 2.08(c) of the Agreement.

## Background

On 31 May 2000, NSI purchased the assets of Xonex from Mr. Wagenheim, the sole shareholder of the company. The parties set forth the terms of the sale in an Asset Purchase Agreement and part of NSI's payment to Mr. Wagenheim was secured by a Promissory Note ("Note") executed in the plaintiff's favor. (Wagenheim Aff. ¶ 6, Ex. B). Pursuant to the Note, NSI was to pay Mr. Wagenheim a total of $355,600.00 in quarterly installments of $29,634.67, with payments to begin on 30 December 2000. Id. Paragraph 4(c) of the note provided that should NSI fail to pay any installment the outstanding principal would be immediately due along with any accrued but unpaid interest. (Plaintiff's Aff. ¶ 6, Ex. B, p. 7). The Note provided NSI with set-off rights if NSI provided Mr. Wagenheim a notice of indemnification pursuant to Section 8.04 of the Agreement.[2] The record indicates that NSI never provided Mr. Wagenheim any notice of indemnification and did not allege in its pleading that it possessed an indemnification claim against the plaintiff.

According to the record, NSI failed to pay Wagenheim the last payment of $29,634.67. (Wagenheim Aff. ¶8; Wagenheim dep. p. 156). Further, in deposition testimony, NSI's President Thomas Pawluk admitted both that NSI failed to make the

---

[2]Section 8.04 of the Agreement, reads, in pertinent part, that for a party to be entitled to indemnification requires the party to "give the party required to provide such indemnification . . . prompt written notice of any legal proceeding, claim or demand instituted by any third party . . . in respect of which the Indemnified Party is entitled to indemnification hereunder." (Wagenheim Aff. ¶5-6, Ex. A. P. 27).

3

last payment to the plaintiff and that the breach was without any contractual defense or right of set-off. (Pawluk dep. p. 40).

Pursuant to the Agreement, NSI assumed specific contractual obligations of Xonex, including a lease agreement between Xonex and Parkway Business Plaza Limited Partnership ("Parkway"). (Agreement, Section 1.07(a), 2.08(c), and 2.09.(b)). In addition, Xonex and NSI executed an Assignment and Assumption of Lease Agreement (the "Assignment") in which NSI agreed to assume the Parkway lease obligations and assumed all of Xonex's rights, title and interest in, to, and under the Parkway lease. (Wagenheim Aff. ¶ 10, Ex. D). Xonex performed as sole guarantor of the Parkway lease to induce Parkway to consent to the Assignment; Mr. Wagenheim was not a party to the Assignment. (Wagenheim Aff. ¶ 10, Ex. E.). Pursuant to the Agreement, NSI specifically agreed to indemnify Mr. Wagenheim on the Parkway lease. (Agreement, Section 8.03; Pawluk dep. p. 24).

In January 2003, nearly three years after NSI's purchase of Xonex, the defendant closed Xonex's Cleveland operations and ceased paying rent to Parkway. (Pawluk dep. p. 29). NSI also failed to pay common area maintenance charges, tax reimbursements and utilities as due under the Assignment. Deposition testimony indicates that NSI admits it had a contractual obligation to continue performing the terms of the Parkway lease. (Pawluk dep. p. 28-9).

On 1 October 2004, Parkway filed suit in Cuyahoga County Court of Common Pleas against Xonex and Mr. Wagenheim for the lease payments owed. (Case No. CV-04-544377). Parkway sought in excess of $563,000.00 in damages. (Docket No. 42 ¶ 13). Pursuant to the indemnification clause in the Purchase Agreement between NSI

4

and Mr. Wagenheim, the plaintiff in the instant matter joined NSI in the state court suit through a cross-claim. On 10 November 2005, the state court granted Mr. Wagenheim's motion for partial summary judgment against cross-claim defendant NSI, concluding that NSI agreed to indemnify Mr. Wagenhim on the Parkway lease pursuant to the Agreement. On 16 November 2006 the state court reduced the suit to final judgment in favor of cross-claimant Wagenheim and against cross-claim defendant NSI in the amount of $774,531.39 plus interest at the standard rate from the date of judgment.

## Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting

5

Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may

6

reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

**Law and Analysis**

In the first instance, Mr. Wagenheim asks this Court to find that NSI breached the terms of the Note and owes the balance of payment due, with interest, to the plaintiff. The parties have stipulated to New York law as governing the Note.  (Docket No. 21). Pursuant to New York law, judgment as a matter of law is appropriate if the contract language is unambiguous.  See Lucente v. IBM Corp., 310 F.3d 243, 257 (2d Cir. 2002).  Contract language is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Met. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990).

The terms of the Note between NSI and Wagenheim set out that NSI shall pay the plaintiff a total of $355,600.00 in quarterly payments of $29,634.67.  The terms of the Note are clear and unambiguous and deposition testimony indicates that, pursuant to indemnification terms in the Agreement, NSI has neither a right of set-off nor a right to stop payment under the Note.  (Pawluk dep. Pp. 40-41; Agreement section 8.04 and 8.05).

Accordingly, the Court finds as a matter of law that NSI breached the clear and unambiguous terms of the Note and grants Mr. Wagenheim summary judgment on his claim for the balance of the principal due and owing, $29,634.67, with applicable interest from 30 September 2003 at 8% per annum.

Mr. Wagenheim next asks the Court to find that NSI breached the Agreement by failing to pay the Parkway lease obligations and by failing to indemnify and hold the plaintiff harmless for those obligations.  Entwined with this claim is Wagenheim's further request for a declaratory judgment, pursuant to 28 U.S.C. § 2201, ordering NSI to indemnify and hold the plaintiff harmless for all costs involving the Parkway lease.[3]

The U.S. Supreme Court has held that "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered"  Migra v. Warren City School Board of Education, 104 S.Ct. 892, 896 (1984).  "Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so"  Id. (citing Allen v. McCurry, 101 S.Ct. 411, 415 (1980)).

The Full Faith and Credit Clause of the Constitution commands that "[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."  U.S. Const. art. IV, § 1.  Pursuant to the grant of

---

[3]The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ⋯ any court of the United States ⋯ may declare the rights and other legal relations of any interested party seeking such declaration."28 U.S.C. § 2201.  The Supreme Court has reiterated the discretionary nature of the Act.  In Public Affairs Press v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962), the highest court opined: "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." Brillhart v. Excess Ins. Co. 316 U.S. 491, 494, 499 (1942) ].  Put another way, the declaratory judgment statute " 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' '  Green v. Mansour, 474 U.S. 64 at 72 (1985).

This Court may and should decline to exercise its discretionary jurisdiction in an action when there is a better and more effective alternative remedy in the same state court where the contract action has been reduced to judgment.  Allstate Insurance Co. V. Mercier, 913 F.2d 273 (6th Cir.1990).

authority in Article IV, § 1, Congress has implemented this command through the Full Faith and Credit Act, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States · · · as they would have by law or usage in the courts of such State · · · from which they are taken." 28 U.S.C. § 1738. As the Supreme Court has explained, "[t]his statute directs a federal court to refer to the preclusion law of the State in which the judgment was rendered." Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); see also, In re Fordu, 201 F.3d 693, 703 (6th Cir.1999). Accordingly, the preclusive effect in this Court of the Ohio court judgment is governed by Ohio law.

Under Ohio's claim preclusion, or res judicata law, "an existing final judgment rendered upon the merits, without fraud or collusion by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privities in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." Lewis v. Horace Mann Insurance Company, 410 F.Supp.2d 640, 652-653 (N.D.Ohio 2005). The judgment of a trial court granting a motion for summary judgment operates as an adjudication, resulting in a final appealable order. Common Cause/Ohio v. Ohio Elections Committee, 150 Ohio App.3d 31, 36, 779 N.E.2d 766, 770 (2002).

As the Sixth Circuit has explained, the concept of res judicata actually encompasses two distinct concepts. See Heyliger v. State Univ. & Community College Sys. of Tenn., 126 F.3d 849, 852 (6th Cir. Oct. 3, 1997); J.Z.G. Resources, Inc. v. Shelby Ins. Co., 84 F.3d 211, 214 (6th Cir.1996). Claim preclusion, or "true" res judicata, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an

9

earlier suit." Heyliger, 126 F.3d at 852 (quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984)); Issue preclusion, or collateral estoppel, on the other hand, mandates that " '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " Heyliger, 126 F.3d at 853 (quoting Restatement (Second) of Judgments § 27 (1982)). Under Ohio law, issue preclusion "prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." Thompson v. Wing, 637 N.E.2d 917, 923 (Ohio 1994). Issue preclusion "applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party [or] in privity with a party to the prior action." Id.; see also, Fordu, 201 F.3d at 704.

Claims may also be barred from consideration pursuant to the doctrine of res judicata. Under res judicata a final judgment on the merits of an action precludes the parties and their privies from relitigating claims that were or could have been raised. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). A claim is barred under res judicata, if the following elements are present:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was or which should have been litigated in the prior action; and (4) an identity of the causes of action.

10

Becherer v. Merrill Lynch, 193 F.3d 415, 422 (6th Cir. 1999) (quoting Bittinger v. Techumseh Prods. Co., 123 F.3d 877, 880 (6th Cir. 1997)).

Here, the state action involving the Parkway lease resulted in a final decision on the merits by a court of competent jurisdiction.  Because Mr. Wagenheim brought a cross-claim against NSI in the state action, the state lawsuit was between the same parties as in the instant federal matter.  The Court finds an identity of the causes of action between the state suit and the instant matter with regard to the damages and indemnification issues involving the Parkway lease.  Mr. Wagenheim's claims regarding the Parkway lease stem from his assertion that NSI bears liability for not indemnifying him pursuant to the parties' Agreement.  The state court explicitly ruled on that issue when it granted Mr. Wagenheim judgment and indemnified him. For these reasons, the Court concludes that plaintiff's claims regarding the Parkway lease are barred under the doctrine of res judicata as well as the doctrine of collateral estoppel.

**Conclusion**

For the reasons set forth above, this Court grants Mr. Wagenheim's motion for partial summary judgment as to his first claim and denies his motion for summary judgment as to his third and fourth claims involving the Parkway lease, as precluded by res judicata and collateral estoppel.  Accordingly, the third and fourth claims of Mr. Wagenheim's Complaint are dismissed as a result of the state adjudication.

IT IS SO ORDERED.

          /s/Lesley Wells
    UNITED STATES DISTRICT JUDGE

Dated: 27 September 2006